UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RUSSELL BOWENS,

                    Plaintiff,

             - against -

THE CORRECTIONAL ASSOCIATION OF
NEW YORK, and SOFFIYAH ELIJAH,
Former Executive Director of the Correctional
Association of New York,

                    Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1523 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

      On March 12, 2019, Plaintiff filed this *pro se* action against his former employer, the Correctional Association of New York ("CANY"), and its former Executive Director, Soffiyah Elijah ("Elijah" or "Defendant Elijah") (collectively, "Defendants"), for alleged violations of various federal statutes and 42 U.S.C. § 1983. (*See* Complaint ("Compl."), Dkt. 1.) This action—Plaintiff's second federal lawsuit against Defendants—involves claims under the Whistleblower Protection Act of 1989 ("WPA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the False Claims Act ("FCA"), and "any and all rights afforded employees to prohibit retaliation guaranteed by the First Amendment of the United States Constitution." (Compl. ¶ 1.) Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is granted. The Court dismisses Plaintiff's WPA, FCA, and § 1983 claims, but grants him thirty (30) days to file an amended complaint setting forth any plausible employment discrimination claims.

## BACKGROUND

On March 7, 2016, Plaintiff filed the complaint in *Bowens v. Elijah* (*Bowens I*), No. 16-CV-1220 (PKC) (CLP), a *pro se* action brought against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA") and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. (*See generally Bowens I*, No. 16-CV-1220 (PKC) (CLP), Dkt. 1.) By Order dated June 8, 2016, the Court dismissed the *Bowens I* complaint for failure to state a claim on which relief may be granted, but granted Plaintiff 30 days to file an amended complaint. When Plaintiff failed to file an amended complaint, his action was dismissed without prejudice. This action is based on the same facts alleged in *Bowens I*. (*Compare* Compl., Dkt. 1, *with Bowens I*, No. 16-CV-1220 (PKC) (CLP), Dkt. 1.)

On approximately April 3, 2012, Plaintiff, a formerly incarcerated person, was hired by CANY[1] on a temporary basis "to work in the Prison Visiting Project Department" and "to help with data entry." (Compl. ¶ 7.) Plaintiff expected his employment to last between 60 to 90 days. (*Id.*) Plaintiff was paid $20.00 per hour and worked 20 hours per week, but he was not given benefits or a salary. (*Id.* ¶ 8.) Subsequently, CANY extended Plaintiff's temporary employment status to last a full year. (*Id.* ¶ 9.) On July 1, 2013, Plaintiff became an official part-time employee of CANY. (*Id.* ¶ 10.) Plaintiff later received a slight pay increase to $20.61 per hour, though he remained ineligible for benefits. (*Id.*)

---

[1] CANY is a private, nonprofit corporation that is registered with the New York State Department of State, Division of Corporations. *See* NYS Department of State, Division of Corporations, Entity Information, http://www.dos.ny.gov/corps/bus_entity_search.html (last visited April 8, 2019). The Association describes itself as "the only independent organization in New York with authority under state law to monitor prisons and report [its] findings to the legislature and the broader public." Correctional Association of New York, *Who We Are*, https://www.correctionalassociation.org/about-cany (last visited April 8, 2019).

Around the same time that he was hired as an official part-time employee, Plaintiff met with Defendant Elijah, who sought to convince Plaintiff not to leave CANY. (*Id.* ¶ 11.) At this meeting, Elijah promised to secure more hours and health benefits for Plaintiff. (*Id.*) While at least eight other employees were hired as full-time staff with benefits over the next two years, Elijah did not follow through on her promises to Plaintiff. (*Id.* ¶¶ 11–12.)

In September 2013, Defendant Elijah suggested that another CANY employee, Judy Yu ("Yu"), should travel with Plaintiff on a series of multi-day offsite visits to various facilities operated by the New York State Office of Children and Family Services ("OCFS"). (*Id.* ¶¶ 13–14.) Yu conveyed this suggestion to Plaintiff and told him that, in lieu of his normal hourly wage, he would receive a $50 daily stipend as compensation for his work on these visits. (*Id.* ¶ 15.) As a result, Plaintiff would work longer hours yet receive significantly less compensation. (*Id.*)

Plaintiff agreed to accompany Yu on the offsite visits to OCFS facilities, but he complained about the compensation structure to other CANY staff, including his immediate supervisor, Jack Beck, and CANY's Chief Financial Officer, Gordon Miller ("Miller"). (*Id.* ¶¶15–16.) These colleagues "conceded that [P]laintiff should be paid his regular wages" while participating in OCFS facility visits. (*Id.* ¶ 16.) Miller spoke with Defendant Elijah about Plaintiff's concerns, but she took no action to address them. (*Id.* ¶ 17.) Miller also discussed Plaintiff's compensation with CANY's Director of Operations and Human Resources, Laura Davidson, who told him that CANY had an unofficial practice of giving part-time workers a $50 daily stipend in lieu of a regular hourly wage for performing work during an offsite visit. (*Id.* ¶¶ 18–19.) Volunteers were also given a $50 stipend for participating in offsite visits with CANY. (*Id.* ¶ 24.) CANY's full-time employees, however, continued to receive their regular salaries while performing offsite visits. (*Id.* ¶¶ 22–23.) Plaintiff believed that this practice was discriminatory and exploitative, but he

3

continued to perform the requested work. (*Id.* ¶ 21.)

On June 21, 2014, CANY sent Plaintiff to attend a five-day conference held by the International Committee of the Red Cross in Baltimore, Maryland ("the Red Cross Conference"). (*Id.* ¶ 27.) Plaintiff was the sole representative sent by CANY to the Red Cross Conference, and he attended conference workshops from 9:00 AM to 5:00 PM each day. (*Id.* ¶¶ 27–29.) When Plaintiff returned from Baltimore, he was informed that he would only be paid for two and one-half days of work. (*Id.* ¶ 30.) At subsequent staff meetings, Plaintiff complained about CANY's failure to pay him for the full five workdays that he spent attending conference workshops, as well as his travel time to and from Baltimore. (*Id.* ¶ 31.) Plaintiff also complained about CANY's failure to publish a report about conditions in New York state court detention facilities, which had been a topic of discussion at the Red Cross Conference. (*Id.* ¶¶ 33–38.)

At an organization-wide retreat in 2015, Plaintiff continued to raise concerns about CANY's failure to publish the report on detention facility conditions and asserted that CANY was discriminating against him based on his part-time employee status. (*Id.* ¶¶ 39–42.) Elijah warned Plaintiff that his employment would be terminated if he disseminated the report. (*Id.* ¶ 42.)

On April 1, 2015, Plaintiff again confronted Elijah about the report at a staff meeting. (*Id.* ¶ 43.) After the staff meeting, Plaintiff attempted to demand "back pay" from Elijah, but she told him that she no longer intended to give him back pay due to his actions during the meeting. (*Id.* ¶ 43.) At some point later, Elijah met with Plaintiff and all other formerly incarcerated CANY employees, ostensibly to explain how CANY's budget worked. (*Id.* ¶¶ 45–46.) At the meeting, however, Elijah harangued Plaintiff and his co-workers, stating that "if they didn't have her back against their co-workers they were [']just heads in the room.[']" (*Id.* ¶ 47.)

On June 1, 2015, Plaintiff gave notice that he would be leaving CANY in three months due to his frustrations with Elijah. (*Id.* ¶ 48.) After he provided notice of his upcoming departure, Plaintiff participated in offsite visits to Great Meadow Correctional Facility and Dannemora Correctional Facility and was paid regular wages for his work.[2] (*Id.* ¶ 49.)

Plaintiff seeks $2,000,000 in damages in this case. (*Id.* ¶ 50.)

*Bowens I*, in which Plaintiff sought relief based on substantially similar allegations, was dismissed without prejudice on August 15, 2016. (*Id.* at ECF[3] 21.) In 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*See id.* at ECF 24 (referencing Charge No. 520-2018-05874).) On August 30, 2018, Plaintiff submitted a letter to the EEOC requesting a Notice of Right to Sue Letter ("Right to Sue Letter"). (*Id.* ¶ 52; *id.* at ECF 22–23.) The EEOC issued a Right to Sue Letter to Plaintiff on December 13, 2018. (*Id.* ¶ 53; *id.* at ECF 25.)

## STANDARD OF REVIEW

Pursuant to the *in forma pauperis* statute, this Court must dismiss a case if the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). An action is frivolous when the claim is based on an "indisputably meritless legal theory, such as when a dispositive defense clearly exists on the face of the

---

[2] Although the complaint does not state when Plaintiff left CANY, the Court infers based on the three months' notice that Plaintiff gave on June 1, 2015 that he left CANY in or about September 2015.

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

complaint." *Newton v. Handleman*, 53 F. App'x 151, 152 (2d Cir. 2002) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)) (internal quotation marks omitted).

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

At the same time, "document[s] filed *pro se* [are] to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

### I. Section 1983 Claims

Plaintiff seeks recovery under § 1983 for the deprivation of certain federal statutory and constitutional rights, including the right to be free from retaliation for the exercise of First Amendment rights. (*Id.* ¶ 1.) Plaintiff's § 1983 claims must be dismissed.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of § 1983 unless "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Here, the complaint contains no allegations establishing that Defendants acted under color of state law within the meaning of § 1983. First, Defendants are clearly private actors. *See Ames v. Stevens*, No. 12-CV-1487 (MAD) (RFT), 2015 WL 5513021, at *7–8 (N.D.N.Y. Sept. 17, 2015) (holding that CANY is a private entity, and that its reports are therefore not public records); *see also Ames v. Stevens*, 669 F. App'x 41, 42 (2d Cir. 2016) (characterizing CANY as "a private, nonprofit advocacy organization with permissive powers to visit prisons and prepare reports on their conditions"). Second, the facts alleged in the complaint do not reveal a nexus, much less a "close nexus," between Defendants' conduct and the State, as there is no indication that the Defendants' actions "received the imprimatur of the State." *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013). Because Plaintiff has not plausibly alleged that Defendants acted under color of state law, Plaintiff's claims under § 1983 are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Whistleblower Protection Act Claims

Plaintiff also asserts that this Court may grant him relief under the WPA. (Compl. ¶ 1 (citing 5 U.S.C. § 2302(b)(8)–(9)).) Plaintiff's WPA claims appear to be based on various

allegations in the complaint that Elijah failed to disseminate a report on the appalling conditions of certain state detention facilities in Brooklyn. (*See id.* at ¶¶ 33–38, 41–42.) The complaint does not, however, connect this alleged conduct with any adverse employment action or other injury to him.

In any event, even if a causal connection could be plausibly inferred from the complaint, Plaintiff's WPA claims would still fail. The WPA only protects *federal government employees* from threatened or actual retaliatory action based on the disclosure of information about dishonest or illegal activities occurring within a federal government entity. *See* 5 US.C. § 2302(b)(8)–(9); *Rivera v. Emerging Health Info. Tech.*, No. 10-CV-8522 (VB), 2011 WL 5346097, at *2 (S.D.N.Y. Nov. 7, 2011) (WPA "only applies to federal employees"). Plaintiff is not a federal government employee, and CANY is not a federal government agency.

Accordingly, Plaintiff's claims under the WPA are dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. False Claims Act Claims

Plaintiff also seeks recovery under the FCA. (Compl. ¶ 1.) The FCA imposes civil liability upon "any person" who, *inter alia,* "knowingly presents, or causes to be presented, . . . a false or fraudulent claim for payment or approval . . . to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(a)–(b). Liability may also be imposed if a person presents a fraudulent claim for payment to a recipient of federal funds, such as a grantee, if that payment will be made from federal funds that are to be used on the federal government's behalf or to advance a federal government interest. 31 U.S.C. § 3729(b)(2)(A).

Plaintiff's FCA claims fail because he may not proceed *pro se* under the FCA. In order to proceed *pro se* in federal court as allowed by 28 U.S.C. § 1654, "[a] person must be litigating an

interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)); *see also L.A. v. Granby Bd. of Educ.*, 227 F. App'x 47, 49–50 (2d Cir. 2007) ("We decide if a party is permitted to appear *pro se* by determining if this is the party's 'own case or one that belongs to another.'" (quoting *Iannaccone*, 142 F.3d at 558)). The FCA permits an action to be commenced by either the federal government or a private person who sues in the name of the federal government through a *qui tam* action. 31 U.S.C. § 3730(a)–(b). While these private persons may sue in the name of the federal government, "the Government remains the real party in interest in any such action." *United States ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (quoting *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990)). Thus, a private party seeking to litigate FCA claims is "not entitled to proceed *pro se*" because that party is not litigating his or her own interest, but rather, the interest of the government. *United States ex rel. Mergent Services*, 540 F.3d at 93.

Accordingly, Plaintiff's FCA claims are dismissed for failure to state a claim. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii).

## IV. Claims under Federal Employment Discrimination Statutes

Plaintiff also seeks to bring claims under Title VII, the ADA, and the ADEA for employment discrimination. (Compl. ¶ 1.) Plaintiff has attached a Right to Sue Letter dated December 13, 2018 regarding his ADA and Title VII charges of discrimination. He does not, however, allege any facts in the complaint supporting claims under those statutes. Furthermore, the Right to Sue Letter does not indicate that Plaintiff has exhausted administrative remedies for his ADEA claims, and his claims under all three statutes appear to be untimely.

Generally, a plaintiff may only sue under Title VII, the ADA, and the ADEA if he has filed a timely complaint with the EEOC or a similar state authority. *Hardaway v. Hartford Pub. Works*

*Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003))); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008) ("Before bringing a suit under the ADEA, a plaintiff must file a timely complaint with the EEOC."); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (stating that Title I of the ADA, which prohibits employment discrimination against disabled employees, "requires a claimant to file a charge of employment discrimination with the EEOC"). To be deemed timely, an administrative claim must be filed with the EEOC within 180 days of the alleged discriminatory conduct, though an administrative claim filed with a state agency is timely if it is filed within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(l).

The failure to file a timely complaint with the EEOC is not necessarily fatal. A plaintiff may overcome this deficiency by showing that he is entitled to equitable tolling. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385–86 (2d Cir. 2015) (stating that Title VII's exhaustion requirement may be subject to equitable defenses). To warrant equitable tolling, a plaintiff must demonstrate that he has pursued his claims with "reasonable diligence" and that "extraordinary" circumstances beyond his control prevented him from filing his administrative claims. *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

In this case, Plaintiff filed ADA and/or Title VII charges with the EEOC, but he did not file an ADEA charge. (Compl. at ECF 24 (indicating a right to sue under Title VII and/or the ADA but not the ADEA).) Furthermore, the charges that Plaintiff filed with the EEOC were untimely. According to the complaint, on June 1, 2015, Plaintiff gave three months' notice before leaving CANY. (Compl. ¶ 48.) Therefore, a charge filed with the EEOC in 2018 could not have

been filed within 300 days after Plaintiff suffered any discriminatory employment action by Defendants—which, at the latest, would have run in 2016. It is now too late for Plaintiff to pursue his unexhausted claims because his last day of work was more than three years ago. And though the exhaustion period for Plaintiff's claims could be equitably tolled, Plaintiff has demonstrated no extraordinary circumstances beyond his control that could excuse his failure to file a timely complaint. *See Zerilli-Edelglass*, 333 F.3d at 80.

Regardless of whether Plaintiff is able to demonstrate circumstances that would justify equitable tolling, the Court further finds that Plaintiff has failed to allege sufficient facts to state a cause of action for employment discrimination under Title VII, the ADA, or the ADEA. Beyond identifying himself as a formerly incarcerated person and a part-time employee of CANY—neither of which is a protected category under the relevant statutes—Plaintiff has failed to allege any facts that plausibly support his Title VII,[4] ADA,[5] or ADEA[6] claims. (*See* Compl. ¶¶ 20–21, 39, 45.)

---

[4] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to state a claim for relief under Title VII, Plaintiff must plausibly allege facts that "provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

[5] To establish a *prima facie* claim of disability discrimination case under the ADA, Plaintiff "must show[: (1)] that his employer is subject to the ADA; [(2)] that he is disabled within the meaning of the ADA or perceived to be so by his employer; [(3)] that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and [(4)] that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

[6] To establish a *prima facie* claim of age discrimination under the ADEA, Plaintiff must demonstrate that: (1) he was within the protected age group (*i.e.*, at least 40 years of age); (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action "occurred under circumstances giving rise to an inference of discrimination, such as the fact that [Plaintiff] was replaced by someone 'substantially younger.'" *Roge v. NYP*

Rather, Plaintiff has made conclusory allegations that the adverse employment actions he suffered were taken on the basis of "blatant discrimination." (*See id.* ¶ 21; *see also id.* ¶¶ 20, 39.) Even under the most liberal construction of Plaintiff's allegations, the Court cannot identify any facts that plausibly connect an adverse employment action to a protected status. *See Littlejohn v. City of New York,* 795 F.3d 297, 309–10 (2d Cir. 2015) (an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face). Accordingly, the complaint fails to state a claim of discrimination on which relief may be granted under Title VII, the ADA, or the ADEA. *Cf. Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86–87 (2d Cir. 2015).

## CONCLUSION

For the reasons stated, Plaintiff's claims are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

In light of this Court's duty to liberally construe *pro se* complaints, *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000), the Court grants Plaintiff thirty (30) days to file an amended complaint. If Plaintiff has a genuine basis for a claim of employment discrimination, he should provide facts in support of that claim, submit a copy of the charge of discrimination filed with the EEOC, and demonstrate circumstances that justify equitable tolling. All further proceedings shall be stayed for thirty (30) days or until further Order of the Court. If Plaintiff fails to file an amended

---

*Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)).

complaint within the time allowed, the Court will enter judgment dismissing this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 12, 2019
      Brooklyn, New York